IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE GEORGE Q CHEN,

    Debtor,

                                     /

No. C 10-00146 JSW

**ORDER REGARDING BANKRUPTCY APPEAL**

Now before the Court is the appeal filed by appellants George Q. Quinn and Cynthia A. Wong ("Appellants") from the final order by the bankruptcy court dated December 23, 2009 in favor of Trustee for the Bankruptcy Estate of George Q. Chen ("Trustee"). Pursuant to Civil Local Rule 16-4, the Court deems this case submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers, their arguments and the relevant legal authority, and good cause appearing, the Court hereby AFFIRMS the bankruptcy court's judgment.

**BACKGROUND**

In 1997, prior to the bankruptcy, George Q. Chen ("Chen") founded a restaurant called "Shanghai 1930," located in San Francisco. The Restaurant was owned and operated by Shanghai LP. Shanghai LLC was the general partner of and owned almost 70% of Shanghai LP.

Chen and Cynthia A. Wong ("Wong") married each other in 1999. On September 1, 1999, Wong and Chen signed a two paragraph document entitled "Amendment to Shanghai 1930, LLC Operating Agreement." On January 1, 2002, Chen and Wong also entered into an agreement entitled "Agreement to Keep Property Separate."

All other pertinent findings of fact and conclusions of law of the bankruptcy court will be discussed below where relevant.

## ANALYSIS

**A.     Standard of Review of Bankruptcy Court's Judgment.**

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. On appeal, a district court must review a bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Fed. R. Bankr. P. 8013; *see also Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007). The test for clear error is not whether the appellate court would make the same findings, but whether the reviewing court, based on all of the evidence, has a definite and firm conviction that a mistake has been made. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). A reviewing court may not overturn a decision, even if it would have weighed in the evidence in a different manner, so long as the trial court's view of the evidence is plausible in light of the entire record. *Id.* at 573-74. In applying the clearly erroneous standard, the appellate court views the evidence in the light most favorable to the party who prevailed below. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991).

**B.     The Bankruptcy Court Did Not Err In Its Conclusions of Law.**

On appeal, the district court must review a bankruptcy court's conclusions of law under the de novo standard. *In re Healthcentral.com*, 504 F.3d at 783. Based on the following grounds, Appellants contend that the bankruptcy court erred in finding that the estate owned 100% of the limited liability corporation that owned 69 or 70% of the restaurant: (1) Appellants contend that Chen transferred 51% of his interest in the LLC to Wong through the Amendment to the Operating Agreement; (2) pursuant to an agreement between Chen and Wong that Wong's earnings and investments, or any property traceable to her earnings, were separate property, Wong contributed separate property services to the restaurant from January 1, 2002 through the petition date; and (3) the Trustee should be barred by laches from arguing that

2

Wong did not own part of Shanghai 1930 as her separate property. The Court will address each argument in turn.

### 1. The Amendment to the Operating Agreement did not Effectively Transmute 51% of Chen's Interest in the LLC.

The bankruptcy court found that, pursuant to California Family Code section 852, the Amendment to the Operating Agreement did not effectively transmute 51% of Chen's interest in the LLC into Wong's separate property. Under California law, "a writing signed by the adversely affected spouse is not an 'express declaration' [as required by statute] *unless* it contains language which expressly states that the characterization or ownership of the property is being changed." *Estate of MacDonald*, 51 Cal. 3d 262, 272 (1990) (emphasis in original); *see also In re Marriage of Barneson*, 69 Cal. App. 4th 583, 593 (1999) (finding that *MacDonald*'s interpretation of the "express declaration" language effectively creates "a presumption that transactions between spouses are not 'transmutations,' rebuttable by evidence the transaction was documented with a writing containing the requisite language."). The determination of whether the language of a writing purporting to transmute property meets this test must be made by reference to the writing itself, without resort to parol evidence. *Barneson*, 69 Cal. App. 4th at 588 (citing *MacDonald*, 51 Cal. 3d at 271-72.).

In *Barneson*, the court found that a signed writing stating that a husband wanted to "transfer" stock certificates into the name of his wife, and a writing stating that the husband sold, assigned and transferred the stocks to his wife, were insufficient. *Barneson*, 69 Cal. App. 4th at 585-86, 590. The court reasoned that the word "transfer" could have been merely the transfer of possession and/or control over the stocks, and did not necessarily mean a change in ownership. The husband failed to specify what interest he was transferring. *Id*. at 590. Nor did the court find that the husband's directions to place his stock in his wife's name necessarily demonstrated a change in ownership. Placing the stock in his wife's name could have been intended to enable his wife to manage his financial affairs for him, or the stocks could have been placed in her name in trust for him. *Id*. at 591.

3

The Amendment to the Operating Agreement ("OAA") at issue here is two paragraphs long and provides, in full:

> This agreement confirms that Cynthia A. Wong will assume the operating partner role at Shanghai 1930 Restaurant Partners I, LP.  Her duties will officially begin on this day and she will be granted 51% of the membership interest in the LLC and any beneficial interest in the limited partnership at 50% of George Q. Chen's LP interest.  The consideration for this transfer of interest shall be that Cynthia A. Wong will perform full time duties to own and operate this restaurant and payment of USD $1.00.
> Hence, all legal documents henceforth shall reflect these changes immediately.  This agreement shall stay in force until such other written notice is submitted.  This shall be the only agreement to reflect these changes.

(Appellants' Opening Brief at 9.)

Appellants argue that because the agreement amended an operating agreement of a limited liability company, the bankruptcy court should have applied California Corporations Code section 17001(ab) ("Section 17001(ab)").  According to Appellants, this statutory provision provides that written amendments to LLC operating agreements must be signed by members of the LLC.  Because Wong and Chen were the only two signatories, they were the only two members.  Therefore, the 51% interest transferred to Wong necessarily came from Chen.  (Appellants' Opening Brief at 11-12.)  However, the statute provides than an "operating agreement" or any amendment thereto, is any agreement between all of the members as to the affairs of a limited liability company.  Cal. Corp. Code § 17001(ab).  The problem with Appellants argument is that the language in the OAA is vague.  It merely provides that Wong "*will* be granted 51% of the membership interest in the LLC."  It does not specify *who* will be providing the membership interest or *when* that interest would be granted.  The OAA could have contemplated that another, separate agreement, signed by all members of the LLC would grant Wong 51% of the membership interest.  Therefore, the fact that Section 17001(ab) requires all members of a limited liability company to be a part of an agreement if it is to be considered an operating agreement or amendment thereto, does not alter the fact that the OAA failed to expressly state that *Chen* was granting 51% of his interest to Wong *at that moment*.

Appellants argue, alternatively, that the bankruptcy court should have examined the Operating Agreement of the LLC to determine that Chen was the only member of it when he signed the OAA.  Appellants contend that referring to the Operating Agreement would not have

4

violated the parole evidence rule because, by stating in the title of the two paragraph agreement that it was an amendment of the operating agreement, the OAA incorporated the Operating Agreement by reference.

Even if reviewing the Operating Agreement of Shanghai LLC ("Operating Agreement") would not have violated the parole evidence rule, as Appellee points out the veracity of the Operating Agreement "has always been in doubt." Appellants produced two different versions of the Operating Agreement during the bankruptcy litigation. One version is dated January 1, 2002 and the other is dated April 4, 1998. Both documents reference Wong as a member of Shanghai LLC, even though the earlier dated version predates both Wong and Chen's marriage and the creation of the OAA. (Exhibit 7.) Appellants do not explain this discrepancy or otherwise demonstrate the veracity of the Operating Agreements in their reply brief. Therefore, the Court finds that the bankruptcy court did not err in finding that the OAA did not effectively transmute 51% of Chen's interest in the LLC into Wong's separate property.

### 2. Wong Did Not Acquire Separate Property Interest in the Restaurant Through Her Efforts to Enhance its Value.

On January 1, 2002, Chen and Wong entered into an agreement entitled "Agreement to Keep Property Separate" ("Property Agreement") and provided that Wong's "earnings and investments or property traceable to her earnings" were her separate property. (Appellants' Opening Brief at 7.) Appellants argue, based on this agreement, that Wong became an equitable owner of the LLC based on her efforts to enhance its value.

However, in the attachments to the Property Agreement, Chen and Wong identified the assets they held at that time as separately owned and those they held as jointly owned. The Shanghai LLC was not identified as separate property, but rather as "jointly owned." In the Property Agreement, jointly owned assets are described by examples of a television set and a joint checking account to pay household expenses – property that is typically community property. (Exhibit 7.) Thus, it appears as though Wong and Chen did not consider themselves to own portions of the Shanghai LLC as separate property. Accordingly, an agreement that earnings and investments or property traceable to earnings were considered separate property,

1 according to Wong and Chen's own documents, did not include the Shanghai LLC. Therefore,
2 the Court finds that the bankruptcy court did not err in determining that Wong did not acquire a
3 separate property interest in Shanghai 1930 through her efforts to enhance its value.

### 3. The Trustee Should Not Have Been Barred by Laches from Denying Wong's Separate Property Interest in the Restaurant.

Appellants argue that the bankruptcy court erred by failing to consider their argument regarding laches, which they raised for the first time, without any citation to any authority or evidence, in their reply brief in support of their motion for summary judgment. The bankruptcy court did not err in not considering Appellants' belatedly raised laches argument. *See Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir.2007) (holding that courts "need not consider arguments raised for the first time in a reply brief").

Moreover, Appellants failed to cite to any legal authority or submit any evidence, either to the bankruptcy court or this Court, in support of their laches argument. (*See* Ex. 14 at 8:19-19 ("We did not assert that because of the – we did not raise it in connection with our motion for summary judgment because it requires much more evidence than can be asserted regarding –"). At most, Appellants vaguely assert that the Trustee "should not have been allowed to take advantage of [Wong] by affirmatively disavowing any interest in the LLC interest in 2005, allowing [Wong] to build up the share value for the next two years." (Appellants' Opening Brief at 2-3.) Apparently, according to Appellants, the Trustee filed an interim report on August 28, 2005 in which she stated that it was not presently in the best interests of the estate to pursue the Shanghai 1930 interest. (Ex. 10 at 12.) However, Appellants do not provide any evidence to demonstrate that Chen had told the Trustee that Wong held a separate property interest in the restaurant. In fact, Appellee argues that the OAA, the document Appellants contend provided Wong with a separate interest in the Restaurant, was not even disclosed until ownership of Shanghai LLC became an issue in the bankruptcy litigation. Appellants do not dispute this assertion in their reply brief. Moreover, Chen argued throughout the bankruptcy proceedings that the estate's interest in the Restaurant was worthless. If the Restaurant was

6

worthless, then Wong was not prejudiced by any representations by the Trustee regarding whether the Restaurant was included in the estate.

Finally, Appellants have not demonstrated that the Trustee was required to provide notice of what she considered to be part of the bankruptcy estate by a certain date or risk waiver. Appellants have not shown that the Trustee violated any deadlines or other rules, or otherwise acted improperly in how she asserted the estate's interest in the Restaurant.

Therefore, based on Appellants' failure to make the requisite showing to support a laches defense, the Court finds that the bankruptcy court did not err in finding that laches was inapplicable.

**C.      The Bankruptcy Court Did Not Err In Its Findings of Fact.**

On appeal, the district court must review a bankruptcy court's findings of fact under the clearly erroneous standard. Fed. R. Bankr. P. 8013. The bankruptcy court's determinations regarding the second and third claims for relief are questions of fact. Upon review of the record, the Court cannot find that the bankruptcy court's determinations were clearly erroneous. Therefore, the Court affirms the bankruptcy court's rulings on these claims.

**CONCLUSION**

For the foregoing reasons, the judgment entered by the bankruptcy court in favor of the Trustee and against Appellants on December 23, 2009, including the underlying findings of fact and conclusions of law, are HEREBY AFFIRMED.

**IT IS SO ORDERED.**

Dated: September 20, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE